HEATHER E. WILLIAMS, Bar No. 122664
Federal Defender
MEGHAN D. MCLOUGHLIN, Bar No. 354051
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: (916) 498-5700
Fax: (916) 498-5710

Attorney for Defendant
KEVIN LESLIE GIPSON

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-CR-00272-TLN |
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM; [SEALED] EXHIBIT A; EXHIBIT B** |
| KEVIN LESLIE GIPSON, | |
| Defendant. | Date:   March 26, 2026<br>Time:  9:30 a.m.<br>Court: Hon. Troy L. Nunley |

Kevin Leslie Gipson submits this sentencing memorandum for the Court's consideration prior to imposing sentence in the above case.  Mr. Gipson respectfully requests that the Court consider applying a downward variance based on a policy disagreement with the United States Sentencing Guidelines (the "guidelines"), as discussed in his *Formal Objection to the Presentence Investigation Report*, Dkt. 26, and under 18 U.S.S.C. § 3553(a), and impose a sentence of 216 months custody.  Such a sentence reflects the severity of the offense, Mr. Gipson's culpability compared to others similarly charged, and his criminal history, while also accounting for his age, treatment prognosis, and below-average risk of recidivating.  As a result, a 216-month sentence is reasonable and sufficient to meet the goals of sentencing under 18 U.S.C. § 3553(a).

//

**BACKGROUND**

Kevin Leslie Gipson grew up in an abusive and neglectful household. *See* Presentence Investigation Report ("PSR"), Dkt. 25, at ¶ 46–48. His father was an alcoholic who was physically and emotionally abusive towards Mr. Gipson, his sister, and his mother. *Id*. at ¶ 46. His father would beat him with a belt and throw things at him. *Id*. Mr. Gipson's parents never told him or his sister that they loved them and barely provided shelter and food. *Id*. at ¶ 47. Their family home was not cleaned and they wore dirty clothes. He and his sister would stay at school as long as they could to avoid going home. *Id*. Mr. Gipson witnessed his father sexually abuse his sister when he was about 13 years old. *Id*. at ¶ 48.

Throughout his adult life, Mr. Gipson worked mainly as a mechanic, had various relationships, and lived a law-abiding life. In 1991, Mr. Gipson sustained his only conviction for Lewd or Lascivious Acts with a Child under 14, and served three years prison. PSR at ¶ 36. He was compliant with his parole conditions, cooperating in sex offender treatment and otherwise remaining arrest free. *Id*.

After his arrest in the instant case, Mr. Gipson expressed great remorse to law enforcement and took responsibility for his actions. He acknowledged that, especially considering his prior offense, he clearly has a problem that must be addressed to ensure it never happens again. To that end, during the pendency of this case, he agreed to a psychosexual evaluation by Dr. Charles P. Samenow, which included an extensive interview, follow-up questioning, and various forms of psychological testing, and provided conclusions and recommendations relevant to analyzing Mr. Gipson's motivation to commit the underlying offense, his treatment prognosis, and risk of recidivism. *See* Case Review and Psychosexual Evaluation for Kevin Gipson, Dr. Charles P. Samenow, attached as Exhibit ("Ex.") A.

Based on psychological testing, Dr. Samenow opines that Mr. Gipson meets the criteria for pedophilic disorder. Ex. A at p. 12. However, additional testing and the facts of the case indicate that, while Mr. Gipson's crime may have been motivated by pedophilic interests, it was facilitated by other traits and factors specific to Mr. Gipson's background and other psychological presentations. This "motivation-facilitation model" presents a more nuanced

explanation of not only what guided Mr. Gipson's behavior, but how to tailor future treatment to effectively rehabilitate him.  Specifically, additional psychological testing assessed Mr. Gipson to have adverse childhood experiences and diagnoses of: (1) adult ADHD, previously undiagnosed; (2) dependent personality traits; and (3) a learning disability (provisional).  *Id.* at pp. 12–14.  Combined with his childhood trauma, digital disinhibition and detachment on the internet, and undifferentiated sexual orientation (difficulty accepting himself as bisexual), Mr. Gipson presents several contributing factors that facilitated his commission of the offense.  *Id*. at pp. 14–16.

Specifically, and for example, Mr. Gipson's ADHD can contribute to having trouble controlling impulsive behaviors.  *Id*. at p. 13.  In addition, and particularly relevant to the facts here, Mr. Gipson demonstrates many features consistent with dependent personality traits, which feature "a pervasive and excessive need to be taken care of that leads to submissive and clinging behavior and fears of separation."  *Id*. at p. 14.  In this case, Mr. Gipson engaged in online communication with an undercover officer, who's fictitious 10-year-old daughter Mr. Gipson sought to have sex with.  PSR at ¶ 7.  He also hoped to involve his friend, with whom he had a sexual relationship, with whom he viewed child sexual abuse material ("CSAM"), and who he thought would be pleased with the opportunity.  *Id*. at ¶¶ 7–11.  Based on a review of communications between Mr. Gipson and his friend, Dr. Samenow notes that the relationship has elements suggestive of dependency, including that his friend complained he would communicate too much or be "needy."  Ex. A at p. 14.  Dr. Samenow notes that, while Mr. Gipson has taken responsibility for his offending behavior, it is likely that had it not been for this friend, he would not have been exposed to CSAM.  *Id*.  Given all these factors, Dr. Samenow further opines that, "[h]ad Mr. Gipson not been presented with the option to meet a minor, it is unlikely he would have done so on his own accord."  *Id*.

Based on the evaluation and considering Mr. Gipson's prior offense for similar conduct, Dr. Samenow concludes that Mr. Gipson presents an average risk of reoffending.  *Id*. at p. 19.  However, he further concludes that Mr. Gipson's case also presents several mitigating and protective factors that render him especially amenable to treatment and rehabilitation, further

*United States v. Gipson* – Sentencing Memorandum

reducing his risk of recidivism to *below average*. *Id*. at p. 22.   Mitigating factors include the ageing process and participation in mental health and sex offender-specific treatment, specifically that Mr. Gipson is motivated and willing to pursue treatment for his sexual offense behavior, and that he demonstrates age-appropriate sexual interests that can be fostered in therapy. *Id*. at p. 19.  Protective factors include healthy sexual interests, capacity for emotional intimacy, constructive family support, goal-directed living, good problem solving, employment history and leisure interests, sobriety, and a hopeful, optimistic, and a motivated attitude towards desistance. *Id*. at p. 20.

Mr. Gipson is fortunate to have his family's support throughout this case, contributing to his below-average risk of recidivism.  His sister and wife continue to provide the care they hope will facilitate his rehabilitation. *See* Character Letters, attached as Ex. B.  His sister emphasizes their shared traumatic childhood, providing insight as to how much they suffered at the hands of their parents. *Id*. at 3–4.  His wife emphasizes that he has been a loving, steady partner who has expressed genuine remorse for his actions. *Id*. at 2.  She believes that, with the right support, he is capable of change, and she will continue to be there to help him. *Id*.

Mr. Gipson is now before the Court having pleaded guilty to a one-count indictment charging Attempted Coercion and Enticement, in violation of 18 U.S.C. § 2242(b), pursuant to a plea agreement with the government.  PSR at ¶¶ 1–2.  Based on a total adjusted offense level of 35 and a criminal history category of V under U.S.S.G. 4B1.5(a), the PSR calculates Mr. Gipson's advisory range to be 262–327 months imprisonment. *Id*. at ¶ 72.

Mr. Gipson agrees with probation's assessment and application of the guidelines to his case.  He has objected to the enhancement of 2G1.3(b)(3)(B) only to preserve his request that the Court consider varying downward based on a policy disagreement with that special offense characteristic. *See Defendant's Objection to Presentence Investigation Report*, Dkt. 26.

## LEGAL AUTHORITY

District courts have "wide discretion to decide whether [a defendant] should be incarcerated and for how long." *Beckles v. United States*, 137 S. Ct. 886, 893 (2017).  The guidelines are one of "several factors" to be considered, but they "do not constrain [the district

court's discretion.]" *Id*. at 893–94 (citations omitted); *see also id.* at 896 (rejecting the government's argument that the guidelines are unlike "the other § 3553(a) factors"). Indeed, a sentencing court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007); *see e.g.*, *Nelson v. United States*, 555 U.S. 350, 352 (2009).

The Supreme Court has ruled that individualized sentencing decisions must be grounded in the factors set forth at 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 245 (2005). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, protect the public, avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, and provide restitution. 18 U.S.C. § 3553(a). The overriding mandate of 18 U.S.C § 3553 is that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in subparagraph (a)(2). 18 U.S.C. § 3553(a). The four purposes of sentencing as identified by the Supreme Court are "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 131 S.Ct. 2382, 2387 (2011).

For the reasons stated below, in Mr. Gipson's case, an individualized assessment of the applicable § 3553(a) factors demonstrates that a total sentence of 216 months custody is sufficient to meet the goals of sentencing.

## ARGUMENT

Mr. Gipson respectfully requests that the Court sentence him to a total of 216 months, or 18 years, custody. Such a sentence reflects the severity of the offense, Mr. Gipson's culpability compared to others similarly charged, and his criminal history, while also accounting for his age, treatment prognosis, and below-average risk of recidivating. As a result, a 216-month sentence is reasonable and sufficient to meet the goals of sentencing under 18 U.S.C. § 3553(a).

1.   *The nature and circumstances of the offense*

Mr. Gipson's conduct in this case is unacceptable. It is a relief that there is no victim and

that his conviction stems from an undercover operation.  It is worth noting, however, that Mr. Gipson did not seek out or solicit sexually explicit material from a minor.  Rather, he responded to a posting on an adult dating website for adult casual sex.  *See* PSR at ¶ 7, n.1.  In fact, throughout the conversations with the undercover officer, he repeatedly attempted to involve the undercover officer in planned sexual acts, to the extent that the undercover officer had to state that he was not interested in engaging in sexual activity with Mr. Gipson, and redirect Mr. Gipson to focusing on his "daughter."  *Id*. at ¶ 7.

In addition, Mr. Gipson's case does not present aggravating factors that are common in enticement cases.  For example, forensic analysis of his phone and computer revealed that he possessed no child pornography, presently or previously.  Similarly, further investigation did not reveal messages on other platforms soliciting child pornography or sexually explicit material from minors.

Finally, Mr. Gipson immediately took responsibility for his actions upon arrest.  He expressed great remorse to law enforcement and cooperated with their investigation.

### 2.  *Mr. Gipson's history and characteristics*

Mr. Gipson's path to committing the underlying offense is more nuanced than his having pedophilic sexual interests, as explained by Dr. Samenow in his evaluation, and supports a 216-month sentence.  While those interests clearly motivated his conduct, it was further facilitated by other factors such as his unresolved trauma, unaddressed mental health issues such as ADHD, a learning disability, and dependent personality traits, undifferentiated sexual orientation, and the digital distancing effect of the internet. Ex. A. at p. 16.  It bears repeating that Mr. Gipson did not seek out a minor to have sex with.  In fact, Dr. Samenow opined in his report that "[h]ad Mr. Gipson not been presented with the option to meet a minor, it is unlikely he would have done so on his own accord."  Ex. A. at p. 16.  Similarly, while he has a prior sex offense, he was convicted in 1991 and there is no evidence of any offending behaviors or possession or viewing of CSAM from that time until he became involved sexually with Mr. Lorenz.  *Id*. at pp. 8, 14 (noting that Mr. Gipson's relationship with Mr. Lorenz has elements suggestive of dependency, and that it is likely that had it not been for Mr. Lorenz, he would not have been exposed to

*United States v. Gipson* – Sentencing Memorandum

CSAM).

Of course, Mr. Gipson did attempt to entice a minor and committed the instant offense, regardless of his motivation or facilitating factors—these factors are not meant to detract from or excuse his conduct.  However, they remain relevant to his ultimate treatment prognosis and risk of recidivism.  Indeed, Mr. Gipson has several protective factors that can help increase the likelihood of successful treatment and mitigate risk of recidivism, such as healthy sexual interests in age-appropriate women and sexual arousal to adult sexual material, employment history and other interests, no excessive use of alcohol or drugs, and goal-directed living, among others.  Ex. A at pp. 19–20.  He immediately took accountability for his action up on arrest, expressed remorse for his conduct, and has expressed a great interest in treatment to have more control over his urges and actions.  In addition, he continues to have the support of his family, specifically his wife and his sister.  Ex. B.

3.  *The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment*

The requested sentence of 216 months is just given the nature and circumstances of the offense as stated above, and for the reasons stated in Mr. Gipson's *Formal Objection to the Presentence Investigation Report*.  A guideline sentence overstates the severity of the offense and Mr. Gipson's culpability given that nearly all offenders are using a computer or phone to commit an offense under this guideline provision—that is how nearly everyone communicates and it does not reflect a unique level of sophistication or predation.  In addition, the guideline range is heavily increased by an enhancement for the minor being under 12 years old.  Again, Mr. Gipson did not seek out a prepubescent minor, and the age of the minor was offered by the undercover officer, not requested by Mr. Gipson.

Furthermore, Mr. Gipson is now 60 years old.  A sentence of 18 years means that he will be nearly 80 upon his release.  The current life expectancy for men in the United States is 76.5 years old.[1]  That number is likely to be significantly lower for Mr. Gipson, who will have spent

---

[1] Jiaquan Xu, M.D., Sherry L. Murphy, B.S., Kenneth D. Kochanek, M.A., and Elizabeth Arias, Ph.D., *Mortality in the United States, 2024*, NCHS Data Brief No. 548, January 2026, at p. 2, *available at*

*United States v. Gipson* – Sentencing Memorandum

the last decades of his life in prison, suffering from fifteen medical conditions requiring nine different prescription medications. *See* PSR at ¶¶ 52, 53. Sadly, studies suggest that individuals age faster while incarcerated than when they live in the community.[2] Some research indicates that every year of incarceration takes two years off an individual's life expectancy.[3] A guideline sentence of 262 months, or nearly 22 years, could mean Mr. Gipson dies in prison. Given his amenability to treatment and hope for rehabilitation, such a sentence is unreasonably harsh.

>    4. *The need to afford adequate deterrence to criminal conduct and protect the public from further crimes*

The requested sentence incapacitates Mr. Gipson for 18 years and he will be nearly 80 years old upon release. It is well-established that as an individual ages, the rate of recidivism gradually decreases.[4] The United States Sentencing Commission has reported that, generally speaking, federal offenders who were released from custody after 60 years old had the lowest rates of recidivism among all age groups: 16.0%.[5] For those who did recidivate after age 60, nearly one-quarter of that group's most serious charge was a public order offense, such as a violation of probation or other court order.[6]

Mr. Gipson specifically presents an even lower risk of re-offending. After extensive

---

https://www.cdc.gov/nchs/data/databriefs/db548.pdf.

[2] *Do you Age Faster In Prison?*, The Marshall Project, Aug. 24, 2015, https://www.themarshallproject.org/2015/08/24/do-you-age-faster-in-prison (last accessed March 18, 2026).

[3] *Incarceration Shortens Life Expectancy*, Prison Policy Initiative, June 26, 2017, https://www.prisonpolicy.org/blog/2017/06/26/life_expectancy/ (last accessed March 18, 2026); Evelyn J. Patterson, 2013:
*The Dose–Response of Time Served in Prison on Mortality: New York State, 1989–2003*
American Journal of Public Health 103, 523_528, https://doi.org/10.2105/AJPH.2012.301148 *available at* https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2012.301148.

[4] United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders, at 10, (Dec. 2017)*, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

[5] *Id*.

[6] *Id*. at 3.

*United States v. Gipson* – Sentencing Memorandum

testing and analysis, Dr. Samenow concluded that Mr. Gipson presents an average risk of sexual recidivism, which is a rate of 3.6% in one year, 5.9% in three years, and 8.3% in five years. Ex. A at p. 18. Further, that risk "will be significantly mitigated by the aging process, participating in mental health treatment/sex-offender specific treatment, development of additional protective factors, and long-term probation/supervised release," falling to below average. *Id*. at p. 22. On supervision he will be required to continue with treatment, along with other onerous measures of scrutiny and accountability.

A sentence longer than 18 years will similarly not provide any general deterrence. In reality, most people have no idea what sentences sex offenders receive; the sentence will not impact anyone but Mr. Gipson. But even if they did, it would make no difference. "Empirical studies have shown that longer sentences have minimal or no benefit on whether offenders or potential offenders commit crimes."[7] The certainty of being caught is "a vastly more powerful deterrent than the punishment."[8] Put simply, police can deter crime by increasing the perception that criminals will be caught, but this Court will not deter crime by sentencing Mr. Gipson to an excessive term of incarceration.

5. *The need to provide Mr. Gipson with needed educational or vocational training, or other correctional treatment in the most effective manner*

The requested sentence will hopefully allow Mr. Gipson, an older man with numerous medical conditions, to have a life outside of prison after serving his sentence.

Mr. Gipson further requests that the Court recommend he be designated to a federal medical center equipped to manage his medical conditions.

6. *The need to avoid unwarranted sentencing disparities*

The requested sentence of 216 months would not result in any unwarranted sentencing disparity. It is significantly longer than his friend with whom he viewed CSAM and who also

---

[7] Brennan Center for Justice, *What Caused the Crime Decline?*, Feb. 12, 2015, *available at* https://www.brennancenter.org/our-work/research-reports/what-caused-crime-decline (last accessed March 18, 2026).

[8] National Institute of Justice, *Five Things About Deterrence*, June 5, 2016, http://www.nij.gov/five-things/pages/deterrence.aspx (last accessed March 18, 2026).

*United States v. Gipson* – Sentencing Memorandum

attempted to be involved in meeting the minor girl. In that case, the defendant received a 14-year sentence for possession of child pornography, while he also maintained CSAM for years, has a history of sexual misconduct with minors, and continued to minimize and mitigate his culpability throughout his criminal case. *See United States v. Lorenz*, No. 2:24-cr-276-DJC, Dkt. 33.

In addition, a sentence of 216 months aligns with sentences imposed in attempted enticement cases in this district, even where the defendant received an enhancement under U.S.S.G 4B1.5. In *United States v. Harris*, No. 2:13-CR-00139-DJC, the defendant was sentenced to 188 months custody for messaging who he believed to be a 14-year-old girl on Facebook over a period of time, attempting to meet up with her to have sex, and soliciting sexually explicit photographs. Dkt. 20 at 14–15; Dkt. 37.

Similarly, in *United States v. Threatt*, No. 2:17-CR-0076-TLN, the defendant was convicted of attempted enticement for messaging who he thought was a 15-year-old girl and attempted to meet with her to engage in sexual acts. Dkt. 42 at p. 12. A forensic analysis of the defendant's computer hard drive also contained approximately 800 chat messages from 2008, in which he communicated with several minor girls expressing how he wanted to have sex with them, soliciting photographs, and receiving sexually explicit photographs from at least one girl. *Id*. He suggested involving five-year olds in their sex acts and admitted to traveling in order to have sex with a 16-year-old. *Id*. He received 212 months custody. *Id*. at Dkt. 56.

Finally, in *United States v. Martin*, No. 2:17-CR-00059-TLN, the defendant unknowingly messaged an undercover officer who purported to have an 11-year-old daughter, and suggested meeting so he could perform sexual acts on the child. Dkt. 32, p. 14–16. He told the undercover officer that he had actually engaged in sexual acts with an 11-year-old in the past. *Id*. The defendant in that case was sentenced to 200 months. *Id*. at Dkt. 85, p. 2. This case is perhaps most similar to Mr. Gipson's.

To be sure, Mr. Gipson's guidelines are higher than the defendants' above, largely because he has a prior sexual offense conviction that triggers application of U.S.S.G. § 4B1.5(a), rather than § 4B1.5(b). The defendants above, however, were also shown to have engaged in

*United States v. Gipson* – Sentencing Memorandum

sexual contact with minors prior to their offense of conviction, either by admission or other evidence. While Mr. Gipson's prior sexual offense is certainly concerning and indicative of a pattern of behavior, there is nothing to indicate he engaged in any sexual conduct with minors beyond his prior conviction 1991 or otherwise possessed any CSAM. Further, the indicted conduct is not as dangerous, extensive, or far-reaching as many of the defendants' described above.

A sentence of 262 months, on the other hand, is more in line with cases involving actual enticement with real victims, rather than attempted enticement in undercover operations. For example, in *United States v. Mora*, No. 2:13-CR-0401-GEB, the defendant received 262 months for one count of enticement, based on a pattern of messaging underage girls online, soliciting sexually explicit photographs, and, on occasions, meeting them and engaging in sexual conduct. Dkt. 45 at 14–16; Dkt. 63. The defendant had at least five victims, ranging from 12 to 16 years old. *Id*.

Mr. Gipson's case is markedly different and considerably less severe. A sentence of 216 is reasonable and would not result in an unwarranted sentencing disparity.

### CONCLUSION

For all the reasons stated above, Mr. Gipson respectfully asks this Court to consider imposing a sentence of 216 months, which significantly punishes him for the underlying offense, while also giving him hope for his life after imprisonment. He further requests that the Court recommend he serve this sentence at a federal medical center equipped to treat his numerous medical conditions.

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

Date: March 19, 2026          */s/ Meghan D. McLoughlin*
                              MEGHAN D. McLOUGHLIN
                              Assistant Federal Defender
                              Attorney for Defendant
                              KEVIN LESLIE GIPSON

*United States v. Gipson* – Sentencing Memorandum

11